## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Boris Gudkovich | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 CV 08714 |
| v. | ) | |
| | ) | |
| City of Chicago, Mayor Office for People | ) | |
| With Disabilities (MOPD) and 48th Ward | ) | |
| of the City of Chicago, | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S
## AMENDED COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

### I.  Basis for Jurisdiction

1.    This is a claim for violation of plaintiff's civil rights as protected by the Constitution of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 1.

2.    The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

**ANSWER:**    Defendants admit that this court has federal jurisdiction as alleged in Paragraph 2.

### II.  The Parties to This Complaint

3.    Plaintiff:
Name:                    Boris Gudkovich
Street Address:          5040 N. Kenmore Avenue, Apt. 614
City and County          Chicago, Cook County
State and Zip Code       Illinois  60640
Telephone Number         630-891-1289
Email Address            borgud36@gmail.com

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 3.

4.      Defendants:

    a.  Mayor Office for People with Disabilities (MOPD) Defendant.

| | |
|---|---|
| Official's Name | Laurie J. Dittman |
| Job or Title | Senior Policy Analyst of the MOPD |
| Street Address | 121 N. LaSalle Street, Suite 104 |
| City and County | Chicago, Cook County |
| State and Zip Code | Illinois  60602 |
| Telephone Number | 312-744-7050 |

    b.  48th Ward Defendants.

No. 1

| | |
|---|---|
| Official's Name | Harry Osterman |
| Job or Title | Alderman of the 48th Ward |
| Street Address | 5533 N. Broadway Street |
| City and County | Chicago, Cook County |
| State and Zip Code | Illinois, 60640 |
| Telephone Number | 773-784-5277 |

No. 2

| | |
|---|---|
| Official's Name | Dan Luna |
| Job or Title | Chief of Staff of the 48th Ward |
| Street Address | 5533 N. Broadway Street |
| City and County | Chicago, Cook County |
| State and Zip Code | Illinois, 60640 |
| Telephone Number | 773-784-5277 |

**ANSWER:**  Defendants deny that Laurie Dittman, Alderman Harry Osterman, and/or Dan Luna are defendants in this lawsuit.  Defendants admit the remaining allegations in Paragraph 4.

5.      Plaintiff Boris Gudkovich, to the best of his knowledge, information and belief, hereby alleges as follows against the above-named defendants:

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

### III. Statement of Facts

6.      Plaintiff Boris Gudkovich is a person with disabilities who permanently limited to walk by time- and distance-based conditions.  Use of a vehicle is a vital essential attribute of his

2

day to day life and he presently experiences severe hardships to park his vehicle.  By medical certificates (Exhibit 11 and 1), Plaintiff requires a restricted parking space near his residence.

**ANSWER:**    Defendants deny that Plaintiff requires a restricted parking space near his residence and that he presently experiences severe hardships to park his vehicle.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6.

7.    Plaintiff holds a valid permanent parking placard issued by Illinois Secretary of State's office.  He resides at the primary aforesaid residential address located on a residential street.  Plaintiff meets all conditions pursuant to Municipal Code of Chicago (M.C.) § 9-64-050 "Parking restrictions —Parking for persons with disability", Sec. (b) to be entitled to disabled parking permit on the residential street.

**ANSWER:**    Defendants deny that Plaintiff meets all conditions pursuant to Municipal Code of Chicago (M.C.) § 9-64-050 "Parking restrictions —Parking for persons with disability", Sec. (b) to be entitled to disabled parking permit on a residential street.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 7.

8.    Per Municipal Code of Chicago (M.C.) § 9-64-050[1]  "Parking restrictions — Parking for persons with disability" a creation of restricted parking space is step by step process and a subject to either approval or denial by several departments and municipal bodies of the City of Chicago as follows:

a)  Per M.C. § 9-64-050 Sec. (c):
    Upon receiving an initial application, the alderman of the ward in which the restricted parking space will be located may [emphasis added] introduce an ordinance proposing approval of the creation of a restricted parking space.
b)  Per M.C. § 9-54-050 Sec. (d):

---

[1] Municipal Code of Chicago (M.C.) § 9-64-050 "Parking restrictions —Parking for persons with disability"

3

> After introduction of an ordinance [emphasis added] described in Sec. (c), the comptroller [of the Department of Finance (comment added)] shall arrange for a parking study.

c) Per M.C. § 9-64-050 Sec. (d) (2):

> Such parking study ... shall include a determination regarding the feasibility and, if appropriate, the proposed location of a proposed restricted parking space. The determination shall be based upon the number of restricted parking spaces currently installed on the residential street; the proximity of the requested restricted parking space to crosswalks, curb cuts, alleys, intersections and fire hydrants; and any other information concerning the applicant's needs and local traffic restrictions [emphasis added].

d) Per M.C. § 9-64-050 Sec. (e) (1):

> Upon completion of the parking survey and the recommendation that a restricted parking space be installed, the comptroller shall inform the applicant of the proposed location of the proposed parking space and shall report such recommendation to the alderman of the ward in which the restricted parking space will be located and to the city council committee on pedestrian and traffic safety.

e) Also, per M.C. 9-64-050 Sec. (e) (1):

> Upon determining that an application for a restricted parking space should not be recommended, the comptroller shall provide written notice to the person submitting the application as well as the alderman of the ward in which the application was made. Any person whose application has not been recommended because the city has determined that a restricted parking space cannot be situated in a location accessible to the applicant's primary residence ... may, within ten days of the date of denial, respond in writing to the mayor's office for people with disabilities [MOPD] requesting a review of the findings and stating reasons in support of reconsideration.

f) Next, per M.C. § 9-64-050 Sec. (e ) (1):

> The mayor's office for people with disabilities shall conduct such review and shall make a determination within 30 days of the date the request for reconsideration was made. The mayor's office for people with disabilities shall report its determination to the comptroller, who shall follow, and, if appropriate, reevaluate the application in light of, such determination.

g) Subject to M.C. 9-64-050 Sec. (e) (2):

> all restricted parking spaces created pursuant to this Sec. shall require approval by a vote of the city council to be effective.

For this purpose, the Committee on Pedestrian and Traffic Safety, to which comptroller's recommendations have been reported, in case of consent, submits an ordinance to establish and amend parking restrictions on portions of sundry streets to the City Council for approval by vote.

4

Such ordinances relating to uncompiled statutes are recorded in the Council's Journal of Proceedings.

**ANSWER:**    Defendants deny that Paragraph 8(b) accurately quotes Section 9-64-050(d) of the MCC.  Defendants admit that the remaining allegations contained in Paragraph 8 that reference MCC § 9-64-050 purport to set forth provisions contained in the MCC but deny that Paragraph 8 sets forth the entirety of the provisions contained in that section.  Defendants lack knowledge or information sufficient to answer the remaining allegations contained in Paragraph 8.

9.      Plaintiff has been substantially affected by the Department of Finance's determination, MOPD Defendant's determination and 48th Ward Defendants' acts and decision that all deprive Plaintiff of restricted parking space near his primary residence.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 9.

10.      By the M.C. § 9-64-050 Sec. (b), on 11/24/2015 Plaintiff submitted an application for restricted parking signs to 48th aldermanic office of the City of Chicago (Exhibit 2).

**ANSWER:**    Defendants admit the allegations contained in Paragraph 10.

11.      As written (paragraph 8 b), per M.C. § 9-64-050 Sec. (d) the comptroller shall arrange for a parking study "*after introduction of an ordinance*" [emphasis added] described in M.C. § 9-64-050 Sec. (c)".  Plaintiff doesn't know whether an ordinance has been introduced by the alderman, but on 02/02/2016 his application (Exhibit 2) was denied (emphasis marked by a determination of the Department of Finance (Exhibit 3) on the reason of "other 3 disabled signs posted at location."  Plaintiff didn't receive the determination due to incomplete delivery address of Department of Finance's notice —missing apartment number, despite the exact address was provided with the apartment number 614 in the application (Exhibit 2).  As indicated in the Appeal (Exhibit 4), a copy of the Department of Finance's notice was received only on 06/09/2016.  The delay may be subject of any conflicts in further, but Plaintiff isn't responsible for it.

**ANSWER:**    Defendants deny that "Plaintiff didn't receive the determination due to incomplete delivery address of Department of Finance's notice —missing apartment number, despite the exact address was provided with the apartment number 614 in the application (Exhibit 2)," as

5

Exhibit 2 shows that Plaintiff did not include an apartment number for his home address on his application.  Defendants also deny the remaining allegations contained in Paragraph 11.

12.     On 6/18/1016 Plaintiff submitted an Appeal (exhibit 4) to the MOPD explaining an objective cause of exceeding "ten days of the date of denial" time limitation for the appeal.  In the Appeal, Plaintiff has requested for reconsideration of original determination of the Department of Finance for three (3) reasons:

**ANSWER:**     Defendants admit that Exhibit 4 purports to be Plaintiff's appeal to the MOPD and that Plaintiff requested reconsideration of the original determination of the Department of Finance.  Defendants deny that Plaintiff has an "objective cause" for exceeding the time limitation for the appeal.

a)     Determination is inconsistent with the law.  Per M.C. § 9-64-050 Sec. (d) (2) (paragraph 8 c) the determination shall be based upon the number of restricted parking spaces currently installed "*on the residential street*" but not the number of restricted parking space "*at location*" [emphases added] as written in the Department of Finance's determination (See Exhibit 3).

M.C. § 9-64-050 Sec. (d) (2) doesn't provide the exact number of restricted parking spaces currently installed on the residential street, and it's a subject of a local agency's rules; and so, Plaintiff provides actual evidence on the comparative basis.

As referred in the appeal (Exhibit 4), a block of N Kenmore Ave between intersecting streets W Foster Ave and W Berwyn Ave, in the extent of 200 meters, contains six (6) restricted parking spaces, while an adjacent block of N Kenmore Ave between intersecting streets W Argyle Ave and W Winona St, in the same extent 200 meters, has contained only three (3) restricted parking spaces (at the time of appeal), and all of them at 5040 N. Kenmore Ave. So, some spaces would be vacant.

**ANSWER:**     Defendants admit that the "block of N Kenmore Ave between intersecting streets W Foster Ave and W Berwyn Ave" contains six restricted parking spaces.  Defendants admit that the "block of N Kenmore Ave between intersecting streets W Argyle Ave and W Winona St" has

contained three restricted parking spaces. Defendants deny the remaining allegations contained in Paragraph 12(a).

    b)    The Plaintiff's application (Exhibit 2) has been made for the address 5038 N Kenmore Ave that differs from the address of his primary residence 5040 North Kenmore Ave and is located not in front of the home where 3 restricted parking signs have been already installed. In the appeal, Plaintiff stated: "if this address [5038 N Kenmore Ave] is unappropriated to the given purpose, any other accessible address could be recommended or chosen on the residential street according to the M.C. § 9-64-050 Sec. (d) (2).

**ANSWER:**    Defendants admit that Plaintiff's application "has been made for the address 5038 N Kenmore Ave that differs from the address of his primary residence 5040 North Kenmore Ave." Defendants deny the remaining allegations contained in Paragraph 12(b).

    c)    The M.C. § 9-64-050 Sec. (d) (2) provide no conditions that restricted parking space shall be in front of the applicant's home, as well as the residential street, on which the restricted parking space is situated, shall be exactly same as a home address of the applicant. Therefore, in the absence of vacant spaces on applicant's residential street, a restricted parking space may be situated on an adjacent residential street. As evidences, in the appeal (Exhibit 4) Plaintiff referred to ordinances for restricted parking signs at 1604 and 1615 W Columbia Ave, Chicago for residents living at the address 6748 N Ashland Ave in the Ward 49 (Exhibit 7). As far as they comply with the M.C. § 9-64-050 Sec. (d) (2) and approved by the City Council ordinances, these evidences serve as statutory rules for any wards of Chicago in like circumstances. So, this rule is also applicable to the restricted parking space near the intersection of W. Winona St. and N. Kenmore Ave accessible to the primary Plaintiff residence.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations as to the restricted parking signs at 1604 and 1615 W. Columbia Avenue, as these parking signs are located in the 49th Ward. Defendants admit that the text of Section (d)(2) does not state that the "restricted parking space shall be in front of the applicant's home, as well as the residential street, on which the restricted parking space is situated, shall be exactly

same as a home address of the applicant." Defendants deny the remaining allegations contained

in Paragraph 12(c).

13.     On 10.24.2016 Department of Finance has issued a determination (Exhibit 5) stated:

> The Department of Finance has received a response from the Mayor's Office for People with Disabilities (MOPD) regarding the denial of your application for disabled parking signs. The original decision to not recommend your application has been upheld.

About causes of denial it is not reported.

**ANSWER:**     Defendants admit the allegations contained in Paragraph 13.

14.     The M.C. § 9-64-050 makes no provisions to inform the applicant with MOPD's determination.   In the event of denial, an applicant to know reasons of denial have to request in person to the MOPD.   As regards Plaintiff's three (3) appellate arguments, the MOPD determination has contained only one row of the irrelevant text (Exhibit 6):

> "Appeal denied by MOPD: signs at locations & not an accessible related reason."

Herein, it's quite evidently that no one of three (3) stated reasons in support of reconsideration have been considered. Such review of the original Department of Finance's decision, as regards stated reasons in support of reconsideration, wasn't conducted at all as well as dismissed without any grounds and due process.   Thereon, Plaintiff alleged that MOPD determination isn't consistent with the law and procedural due process of law.

By the law, M.C. § 9-64-050 Sec. (e) (1), MOPD "shall make a determination" and "shall report its determination to the comptroller" of the Department of Finance, "who shall follow" (paragraph 8 f).   This means that MOPD is an administrative agency responsible for conducting review and authorized for issuing a determination for the final decision regarding a restricted parking. Because of lack substantial evidences, the MOPD determination doesn't correspond or disagree with the law and MOPD is responsible for denial of Plaintiff s restricted parking right.

**ANSWER:**     Defendants admit that Plaintiff accurately recounts the text of Exhibit 6, but deny

that the text is "irrelevant."  Defendants admit that Plaintiff has accurately quoted Section (e)(1)

but denies that Paragraph 14 sets forth the entirety of the provisions contained in that Section.

Defendants deny the remaining allegations contained in Paragraph 14.

15.     According to the Illinois Administrative Procedure Act (APA)[2] Sec. 10-5, state agencies that make decisions to be affected people's rights, duties, and privileges "shall adopt rules establishing procedures for contested case hearings." On 12.15.2016, Plaintiff submitted to the MOPD a Petition for Informal Administrative Hearing (Exhibit 8) due to the MOPD's determination (Exhibit 6) doesn't comply with law and statutory requirements of the APA and allegedly breaks Petitioner's rights guaranteed by the Constitution of the State Illinois: due process of law and equal protection of the law.[3]

**ANSWER:**     Defendants admit that on December 15, 2016, Plaintiff submitted to the MOPD a Petition for Informal Administrative Hearing as a result of MOPD's determination. Defendants deny the remaining allegations contained in Paragraph 15.

16.     In the Petition, Plaintiff stated that neither MOPD's nor Department of Finance's determinations (see Exhibits 6 and 5 respectively) shall be considered as final determinations ad litem of the APA and contradicts to it. Particularly, per Sec. 10-50 —Decisions and Orders of the APA, "All agency orders shall specify whether they are final and subject to the Administrative Review Law" [ARL].[4] According to ARL Sec. 3-102, this law applies only "to review judicially a *final* (emphasis added) decision of any administrative agency." The Petition for Administrative Hearing left without an answer. Refusing Plaintiff's request for a final decision, MOPD Defendant deprived of the Plaintiff's right for judicial review of the contested case in the Circuit Court of the Illinois Cook County.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 16.

17.     On 3/10/2017, in response to the Petition (Exhibit 8), MOPD Defendant has distorted the Petition with arguments (Exhibit 9) supporting the negative MOPD determination. These arguments are untrue and contradict APA and M.C. § 9-64-050.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 17.

---

[2]  5 ILCS 100/10 Illinois Administrative Procedure Act (APA).

[3] Illinois Constitution, Article I – Bill of Rights, Section 2

[4] Illinois Administrative Review Law – 735 ILCS 5/Article III Administrative Review (ARL)

a) In the Petition, Plaintiff "has requested not a "written documentation regarding [the] application for a disabled parking space in front of [the] home" but establishing procedures for contested case hearings according to APA Sec. 10-5 and 10-10. In addition, as evidences from Exhibits 2 and 4, Plaintiff has never applied to set a precedent with posting the 4th sign in front of home at location 5040 N Kenmore Ave where three (3) restricted parking signs has been already installed.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 17(a).

b) Instead of reviewing the appeal, MOPD Defendant unearths the efficient causes of denial that haven't been stated evidently but hidden behind a mask of personal ambitions:

> MOPD also noted that in the application submitted to the Department of Finance you indicated [emphasis added] that you are able to walk 200 feet and do not use an assistive devise. For these reasons, MOPD supported the original decision by the Department of Finance and denied your appeal (see Exhibit 9), [sic]

This statement is out with the law. Per (M.C.) § 9-64-050 Sec. (b), an application for disabled parking signs is based on the Illinois VSD62 form "Persons with Disabilities Certification for Parking Placard/License Plates" that is the Illinois law.   The Part 2 of this form: "Medical Eligibility Standards and Medical Professional Certification."[5] has similar provisions with well-defined scope.   As follows from the Standards, such conditions, as applicant "cannot walk 200 feet" and "uses an assistive devise" are parts of the eligibility standards (clauses 6 and 4 respectively). These conditions prohibited to be voluntary indicated, and subject to medical

---

[5] **PART 2: Medical Eligibility Standards and Medical Professional Certification**
___ [1] Patient is restricted by a lung disease to such a degree that the person's forced (respiratory) expiratory volume (FEV) is one second, when measured by spirometry, is less than one liter.
___ [2] Patient uses a portable oxygen device.
___ [3] Patient has a Class III or Class IV cardiac condition according to the standards set by the American Heart Association.
___ [4] Patient cannot walk without the assistance of a wheelchair, walker, crutch, brace, and other prosthetic device or without the assistance of another person.
___ [5] Patient is severely limited in the ability to walk due to an arthritic, neurological, oncological or orthopedic condition.
___ [6] Patient cannot walk 200 feet without stopping to rest because of one of the above five [5] conditions.
___ [7] Patient is missing a hand or arm or has permanently lost the use of a hand or arm.

10

professional certification.  As certified by the medical professional (Exhibit 11), Plaintiff is eligible for Standards as a person "severely limited in the ability to walk" due to health conditions and specified diseases (clause 5).  According to Medical Eligibility Standards and medical doctor's certifications (Exhibits 11 and 1 accordingly), Plaintiff is eligible for disabled parking placard and also, based on it, disabled parking signs.  These regulations are Illinois law, and breach of the law is violation of the state law.

**ANSWER:**    Defendants admit that, per Exhibit 9, "MOPD also noted that in the application submitted to the Department of Finance *you indicated* [emphasis added] that you are able to walk 200 feet and do not use an assistive devise. For these reasons, MOPD supported the original decision by the Department of Finance and denied your appeal."  Defendants deny the remaining allegations contained in Paragraph 17(b).

18.    Within a scope of jurisdiction of the M.C. § 9-64-050 Sec. (c), alderman of the ward of Chicago "may introduce an ordinance proposing approval of the creation of a restricted parking space."  After approval by vote of the city council, a proposed ordinance is effective as a City Council Ordinance.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 18.

19.    For this purpose, on 9/2/16 Plaintiff, per direct conversation, contacted Alderman of 48th Ward Harry Osterman to introduce an ordinance like City Council ordinances created restricted parking spaces at 1604 and 1615 W Columbia Ave, Chicago for residents living at the address 6748 N Ashland Ave in the 49th Ward (Exhibit 7).  Alderman Harry Osterman concurred to propose a similar ordinance for a restricted parking space near the intersection of W. Winona St. and N. Kenmore Ave and charged this matter to Chief of staff Dan Luna.

**ANSWER:**    Defendants admit that on or around September 2, 2016, Plaintiff contacted Alderman Harry Osterman to introduce an ordinance to create a restricted parking space for him similar to the 49th Ward parking spaces identified in Paragraph 19.  Defendants deny the remaining allegations contained in Paragraph 19.

20.    On 9/11/2016 Plaintiff met Defendant Dan Luna in the designated place at the intersection of W. Winona St. and. N. Kenmore Ave.  Herein, Dan Luna strongly objected alderman's instruction without explanation of the reason or a notice. By due process, fair

procedures shall prevent any official, to whom a matter is charged, from arbitrary and unreasonable decisions, and a notice must be given to the person who is affected by an official decision. Nothing was done for resolving this issue. Exactly, this action of Defendant Dan Luna became an obstacle and a stumbling block to settle this issue out of court.

**ANSWER:** Defendants admit that on or around September 11, 2016, Plaintiff met Dan Luna at the intersection of W. Winona St. and N. Kenmore Ave. Defendants deny that Dan Luna is a defendant. Defendants deny the remaining allegations contained in Paragraph 20.

21. Moreover, as written by MOPD Defendant Laurie J. Dittman in the notice on 3/10.2017 (exhibit 9),

> … *the aldermanic* office for the ward in which the application was made contacted MOPD to indication its opposition to adding *any additional* [emphasis added] disabled residential parking spaces at that address. Please note that, by ordinance, City Council members have complete discretion over any residential parking-related issues in their wards.

As written above (paragraph 8 a), the alderman *may* [emphasis added] introduce an ordinance proposing approval of the creation of a restricted parking space in his ward which is effective after approval by the city council. However, any other activities of the alderman as regards restricted parking issues, such as depriving the statutory right, aren't provided by the M.C. § 9-64-050. Therefore, any extralegal activity to deprive a person of his right is abuse of official power.

**ANSWER:** Defendants admit that Plaintiff has accurately quoted from Exhibit 9, and that Laurie Dittman authored the March 10, 2017 notice. Defendants deny that Laurie Dittman is a defendant. Defendants also admit that the Alderman may introduce an ordinance proposing approval of the creation of a restricted parking space in his ward which is effective after approval by the city council. Defendants deny the remaining allegations contained in Paragraph 21.

22. On 11/1/2017 the fourth (4th) restricted parking space (Exhibit 10) was established exactly where Plaintiff requested on 11/24/2015 in his application and where his application was denied by the Department of Finance on 02/02/2016 for the reason: "other 3 disabled signs posted at location." On 11/6/2017 Plaintiff contacted Defendant Dan Luna about

the applicant's preferential right for this restricted parking permit. On the request, 48th Ward refused to provide any information about the 4th restricted parking space.

**ANSWER:**   Defendants admit that on November 6, 2017, Plaintiff contacted Dan Luna. Defendants deny that Dan Luna is a defendant. Defendants deny the remaining allegations contained in Paragraph 22.

23.   As written above (paragraph 21), aldermanic office indicated "its opposition to adding any additional [emphasis added] disabled residential parking spaces at that address." As a result, Plaintiff was deprived of restricted parking space not only in said address but also, he was entirely denied from any accessible places on residential streets. Despite that, the fourth (4th) restricted parking space was established exactly there where he requested. This fact demonstrates not only discrimination against Plaintiff but also a grievous insult to him personally. In addition, this fact is sign, of individual discrimination that refers to the discrimination against one person (Plaintiff by another. In this connection, Plaintiff alleges that it is a personal act of discrimination caused by certain negative attitudes of the 48th administration toward Plaintiff personally and subject to "Class of one" equal protection.

**ANSWER:**   Defendents deny the allegations contained in Paragraph 23.

24.   M.C. § 9-64-050 Sec. (d)(2) sets two applicant-dependent clauses for determination:

*determination shall be based upon*

[1] *the number of restricted parking spaces currently installed on the residential street*

[in time of issuance of the determination (comment added)];

[2] *... and any other information concerning the applicant's needs...* [emphasis added].

According to the M.C. § 9-64-050 Sec. (e) (1), the application for a restricted parking space shall not be recommended if "the city has determined that a restricted parking space cannot be situated in a location accessible to the applicant's primary residence." This citation relates to accessibility in a strict sense of feasibility (M.C. § 9-64-050 Sec. (d) (2)). The second clause, "the applicant's needs," relates to medical eligibility, as set forth above (paragraph 17 b). Therefore, the first clause, the number of restricted parking spaces, has first priority in the law, and the second clause is its subordinate and has no grounds for denial if the first clause appropriate. Because the number of restricted parking spaces on the residential street is limited, when there are two or

13

more competing interests, first priority is priority of time as an equitable principle. Thus means that the first in time prevails over the others, and who is earlier in time, that is stronger in law.

**ANSWER:** Defendants admit that Plaintiff has accurately quoted, in part, from MCC §§ 9-64-050(d)(2), (e)(1), but deny that Plaintiff has quoted from the relevant sections of the MCC in their entirety. Defendants deny the remaining allegations contained in Paragraph 24.

25. As set forth above and emphasized (paragraph 24), a discriminated person, Plaintiff, has appeared first in time, on 02/02/2016, when the negative determination of the Department of Finance (Exhibit 3) has been issued and the 4th sign hasn't been even in mentioning; so, the favored person is the second. Therefore, creating the fourth (4th) restricted parking space on 11/1/2017 at said location in privilege of the second person and discrimination of the person with first priority is act of outrage that breaks the constitutional principle of equality before the law. This principle demands the law must guarantee that no individual should be privileged or discriminated against by the government, as well as any official. Thereon, the ordinance regarding the fourth restricted parking, discriminating the first person and privileging the second, violates the principle of equality under the law and breaks the ruling principle of the M.C. § 9-64-050. Therefore, the ordinance is inconsistent with the law, and an act of Defendant Harry Osterman to introduce the ordinance is abuse of power.

**ANSWER:** Defendants deny the allegations contained in Paragraph 25.

26. A new ordinance, creating the fourth (4th) restricted parking space, discriminates Plaintiff`s privileges for restricted parking space. By the Privileges or Immunities Clause of the Fourteenth Amendment to the US Constitution, Alderman Hairy Osterman is prohibited to introduce any ordinances proposing approval privileges of one person in prejudice to abridge the privileges of other one

**ANSWER:** Defendants deny the allegations contained in Paragraph 26.

27. At this point, all opportunities of out-of-court adjustments and settlements are exhausted. Thus, this action is the only method available to obtain the requested relief.

**ANSWER:** Defendants deny the allegations contained in Paragraph 27.

## IV. CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u> — VIOLATION OF PROCEDURAL DUE PROCESS OF LAW CLAUSE BY MOPD

28.     Plaintiff incorporates by reference the allegations of paragraphs 1 to 27 above as though set forth herein.

**ANSWER:**   Defendants incorporate by reference their answers to Paragraphs 1 through 27 above as though set forth herein.

29.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits City of Chicago from depriving any person of life, liberty, or property without due process of law.  Despite the fact that, according the M.C. § 9-64-050 Sec. (e) (2), "the issuance of the permit and installation of the sign ... does not confer any property rights to the applicant," the vital essential attributes, rights and interests of day to day life are integral parts of life and liberty.

**ANSWER:**   Defendants admit that the Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits the City of Chicago from depriving any person of life, liberty, or property without due process of law.  Defendants admit that, according to Section (e)(2) of MCC § 9-64-050, "the issuance of the permit and installation of the sign ... does not confer any property rights to the applicant."  Defendants deny the remaining allegations contained in Paragraph 29.

30.     Allegedly Plaintiff was subjected to the arbitrary, unjustified or mistaken actions of the MOPD's official power and was deprived of his rights without of due process of law.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 30.

31.     MOPD's official deprived Plaintiff of his vital interest and statutory right for a restricted parking space near his primary residence without of due process of law that is proved by clear and convincing supporting evidences.

   1)  The MOPD's determination (Exhibit 6) isn't consistent with the law.  As written and emphasized above (paragraph 14), the determination violates M.C. § 9-64-050 Sec.

(e) (1) as Plaintiff's appeal (Exhibit 4) has been denied by MOPD without conducting a review.

2) Misinterpretation of Plaintiff's Application (exhibit 2) as if "in front of his home" — one of the cause of denial. Allegation of MOPD Defendant that the Application for restricted parking space has been made "for a disabled residential parking space in front of his home" (paragraph 17 a) is false.

3) The MOPD determination breaks the rule of law, the legal principle of prevalence of the law over agency rules in case of variances. M.C. § 9-64-050 provisions, as regards restricted parking, prevail over agency rules. MOPD determination signs at location (Exhibit 6) violates the law because M.C. § 9-64-050 Sec. (d)(2) defines not the number of restricted parking spaces at location but the number of restricted parking spaces installed on the residential street [emphasizes added] (paragraphs 8 c).

4) MOPD Defendant violate Medical Eligibility Standards and Medical Professional Certification VSD62 and Plaintiff s medical eligibility for restricted parking space (paragraph 17 b).

5) Plaintiff was deprived to Administrative Hearing under the APA. Plaintiff's Petition for Administrative Hearing (Exhibit 8) under the APA was denied by the MOPD (paragraph 15).

6) Plaintiff was deprived by the MOPD to judicial review of the contested case as regards ARL (paragraph 16).

7) Plaintiff was deprived by the MOPD to opportunity to be heard. By procedural due process parties whose rights are to be affected are entitled to be heard. As result of denial of the petitions for administrative hearing (Exhibit 8), Plaintiff was deprived to constitutional guarantee to be heard.

**ANSWER:** Defendants deny the allegations contained in Paragraph 31 as well as in subparts (1) through (7).

## SECOND CAUSE OF ACTION —VIOLATION OF PROCEDURAL DUE PROCESS OF LAW CLAUSE BY 48th WARD

32. Plaintiff incorporates by reference the allegations of paragraphs 1 to 31 above as though set forth herein.

**ANSWER:**     Defendants incorporate by reference its Answers to Paragraph 1 through 31 above

as though set forth herein.

33.     Allegedly, Plaintiff was subjected to the arbitrary, unjustified or mistaken actions of the 48th officials' power and was deprived of his rights without of due process of law what is proved by clear and convincing supporting evidences.

1) Arbitrary and unreasonable violation of due process of law.  Defendant Dan Luna was responsible for the matter charged by Alderman Harry Osterman in respect of the restricted parking space (paragraphs 19 and 20).  However, Defendant Dan Luna unfairly objected an alderman's instruction and notice, required by due process of law, wasn't given. As written, exactly this action of Dan Luna became an obstacle and a stumbling block to settle this issue out of court (paragraph 20).

2) Abuse of power is a deprivation without due process of law. As written (paragraph 21), in the M.C. § 9-64-050 the alderman isn't entitled to deny a right of the restricted parking space. In addition, he must abide the priority rule of the law (paragraph 26) being prohibited to introduce an ordinance or to enforce the law that discriminates against one person and favors other. Therefore, any extralegal activity to deprive a person of his right is abuse of official power.

3) Establishing the fourth (4th) restricted parking space exactly in the place, that has been primarily claimed by Plaintiff and which has been denied by MOPD Defendant as "not an accessible related reason" (Exhibit 6), and full deprivation of Plaintiff's right by abusing of the aldermanic power, everything taken together, demonstrate not only discrimination against Plaintiff but also a grievous insult to him personally (paragraph 23). In addition, this is sign of individual discrimination that refers to the discrimination against one person (Plaintiff) by another.   In this connection, Plaintiff alleges that it is a personal act of discrimination caused by certain negative attitudes of the 48th administration toward Plaintiff personally.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 33 as well as in subparts

(1) through (3).

**THIRD CAUSE OF ACTION —VIOLATION OF EQUAL PROTECTION CLAUSE OF THE LAWS BY MOPD AND 48TH WARD**

34.     Plaintiff incorporates by reference the allegations of paragraphs 1 to 33 above as though set forth herein.

**ANSWER:**   Defendants incorporate by reference the Answers to Paragraphs 1 through 33 above as though fully set forth herein.

35.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is applicable to cases of municipal services. It prohibits discriminating against some persons, and favoring others in like circumstances.  Prohibiting from denying any person the equal protection of the laws means that a state and their officials must treat an individual in the same manner as others in similar conditions and circumstances.

**ANSWER:**   Paragraph 35 asserts a legal conclusion to which no answer is required.  To the extent that an answer is required, Defendant deny that Paragraph 35 properly characterizes the protections of the Equal Protection Clause.

36.     On this ground, allegedly Plaintiff was deprived of equal protection under the laws regarding his vital interest and statutory right for a restricted parking space near his primary residence by both MOPD and 48th Ward officials' power. Plaintiff supports this allegation by the clear and convincing evidences as following:

1)     As referred (paragraph 8 c), M.C. § 9-64-050 Sec. (d)(2) doesn't provide with an exact number of parking spaces may be installed on the residential street and it's a subject of a local agency's rules; and so, Plaintiff provides actual evidence on the comparative basis.  As written (paragraph 12 a), the law has approved creation of six (6) restricted parking spaces in one block at N Kenmore Ave while other block, in which Plaintiff resides, at the time of appeal O6/18/2016 (Exhibit 4), has contained only three (3) restricted parking spaces in like circumstances and conditions defined by M.C. § 9-64-050 Sec. (d)(2).  In like circumstances and conditions Plaintiff has been denied on the reason of "3 disabled signs posted at location." This fact presents clear and convincing evidence of Plaintiff's discrimination of the equal protection of the laws.

2)     The M.C. § 9-64-050 Sec. (d) (2) (paragraph 8 c) provide no conditions that the residential street, on which the restricted parking space is created, shall be exactly

same as a home address of the applicant. Instead, M.C. § 9-64-050 Sec. (b) (3) and (e) (1), make a condition that a parking space shall be accessible to the applicant's primary residence. This condition entitles the applicant to make the application for the parking space on the residential street adjacent and accessible to the applicant's primary residence. As well as, this condition entitles the City of Chicago to approve such application as provided with the M.C. § 9-64-050. As a proof, in the Appeal (Exhibit 4) Plaintiff gives the clear and convincing evidence of passed City Council ordinances for creating two (2) accessible parking spaces at West Columbia Ave for residents living at North Ashland Ave in Chicago, 49th Ward (Exhibit 7). Statutory rules of the city council ordinances may be enforced in like conditions for any ward of Chicago. Despite the grounded evidences, Plaintiff was denied of equal protection of the law for the accessible parking space in like circumstances by baseless decisions of both MOPD Defendant (paragraph 12 c) and 48th Ward Defendants (paragraphs 20 and 21).

3) "Class of one" equal protection protects individual against wholly arbitrary acts of state and municipal official. As set forth above, abuse of power and discrimination of Plaintiff "to adding any additional disabled parking spaces at that address" (Exhibit 9), on one side (paragraphs 21 and 26), and favoring the second person by creating the fourth (4th) parking space "at that address", on the other (paragraphs 23 and 26), are the clear and convincing evidences that Plaintiff has been treated differently from similarly situated person on intentional and. no rational basis arising from an illegitimate animus, rather than chance or a permissible official power. According to the "class of one" legal doctrine, plaintiff was discriminated of equal protection of the law.

**ANSWER:** Defendants deny the allegations contained in Paragraph 36 and its subparts (1) through (3).

## FOURTH CAUSE OF ACTION —VIOLATION OF THE PRIVILEGES OR IMMUNITIES CLAUSE BY 48TH WARD

37. Plaintiff incorporates by reference the allegations of paragraphs 1 to 36 above as though set forth herein.

**ANSWER:** Defendants incorporate by reference their Answers to Paragraphs 1 to 36 above as though fully set forth herein.

19

38.     Plaintiff was prohibited for a parking space at the accessible portions of the residential street and was deprived of his right at all points. As written (paragraph 22), through one year and 9 months after his denial, the fourth (4th) restricted parking space was created at the same portion of the residential street or same place where Plaintiff was denied by the Department of Finance, MOPD, and 48th Ward, all put together, on the reason of "other 3 disabled signs posted at location." As set forth above (paragraph 2.5), the ruling principle of the determination by M.C. § 9-64-050 Sec. (d) (2) is "the number of restricted parking spaces currently installed on the residential street." Because the number of restricted parking spaces on the residential street is limited, priority of time is equitable principle. It means that the first in time prevails over the others and is stronger in law.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 38.

39.     Non-preemptive establishing of the fourth (4th) restricted parking space breaks the antidiscriminative privileged principle of priority of the law which is the M.C. § 9-64-050. Fact in issue is full discrimination against first in time and favoring other person, who has been behind, by force of discrimination Plaintiff's substantive vital rights.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 39.

40.     The privileges or immunities clause of the Fourteenth Amendment to the US Constitution prohibits states to make or enforce any law that shall abridge the privileges or immunities of the US citizens.  As well, by this clause an official is prohibited to introduce an ordinance that abridges privileges of the person with priority in favor of the other who has no priority privileges. Plaintiff alleges that district court has jurisdiction under the Privileges or Immunities Clause of the Fourteenth Amendment to the US Constitution because a subject matter is growing out of the relationship between the citizen and the municipal state government to impose the restraint upon state or municipal action.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 40.

41.     The new ordinance establishing the 4th restricted parking space is a local law of the City of Chicago that adds privileges towards the second person in prejudice to the first one. These privileges belong to Plaintiff as of right by his priority who have been abridged without any grounds. For this reason, the new ordinance regarding the 4th parking space is deemed to be unconstitutional.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 41.

## FIFTH CAUSE OF ACTION — VIOLATION OF RIGHTS PROTECTED BY THE LAWS OF ILLINOIS BY THE MOPD

42.     Plaintiff incorporates by reference the allegations of paragraphs 1 to 41 above as though set forth herein.

**ANSWER:**     Defendants incorporate by reference their Answers to Paragraphs 1 through 41 above as though fully set forth herein.

43.     Violation by MOPD and 48th Ward Defendants of the Due Process of Law and Equal Protection of The Law Clauses of the Illinois Constitution, (Illinois Constitution, Article 1 — Bill of Rights, Sec. 2) which has similar provisions of the Fourteenth Amendment to the US Constitution.

**ANSWER:**     Paragraph 43's comparison of federal and Illinois constitutional provisions asserts a legal conclusion to which no answer is required.  Defendants deny the remaining allegations contained in Paragraph 43.

44.     Violation by MOPD Defendant of the right of Administrative Hearing according to the APA — the Illinois Administrative Procedure Act (Sec. 5 ILCS 100/10-5 and 5 ILCS 100/10-10).

**ANSWER:**     Defendants deny the allegations contained in Paragraph 44.

45.     Violation by MOPD Defendant of the ARL —the Illinois Administrative Review Law - 73S ILCS 5/Article III, Sec. 3-102 —which applies "to review judicially a final (emphasis added) decision of any administrative agency."    With denial of a final decision, MOPD has rejected a judicial review of the contested case in the Circuit Court of the Illinois Cook County.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 45.

## SIXTH CAUSE OF ACTION —IMPAIRMENT OF HEALTH

46.     Plaintiff incorporates by reference the allegations of paragraphs 1 to 45 above as though set forth herein.

**ANSWER:**     Defendants incorporate by reference the Answers to Paragraphs 1 through 45 above as though set forth fully herein.

21

47.     According to Medical Eligibility Standards and Medical Professional Certification, Plaintiff is a person with disabilities due to diagnosis as provided with medical certifications (Exhibits 11 and 1) and the Application for disabled parking signs. Need of the restricted parking space for Plaintiff is a kind and subject of adequate medical care.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 47.

48.     MOPD Defendant and 48th Ward Defendants acted and continue to do so knowingly, intentionally, willfully and maliciously denying Plaintiff adequate medical care.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 48.

49.     As a result of unjustified conducts of MOPD Defendant and 48th Ward Defendants, Plaintiff was injured as follows:

       1)     Defendants have failed to provide Plaintiff with needed medical care for two years and permanently do harm to his health;

       2)     Plaintiff experiences severe emotional distress and suffering.

**ANSWER:**     Defendants deny the allegations contained in paragraph 49 as well as subparts (1) and (2).

50.     Therefore, plaintiffs are entitled to declaratory anal injunctive relief.

**ANSWER:**     Defendants deny that Plaintiff is entitled to declaratory or injunctive relief.

51.     Plaintiff asks that the case be tried by a jury:  ( ) YES (X) NO

**ANSWER:**     Defendants admit that Plaintiff does not ask that the case be tried by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request the following:

1.     Enter judgment against the Defendants;

2.     Enter declaratory judgment that declares:
a)     MOPD and 48th Defendants' actions alleged herein violate Plaintiff's Fourteenth Amendment rights to due process of law anal equal protection of the laws;

22

b)    48th Ward Defendants actions alleged herein violate- Plaintiff s Fourteenth Amendment right to privileges or immunities.

c)    MOP'D Defendant actions violate Illinois Medical Eligibility Standards and Medical Professional Certification VSD62.

3.    Issue a judgment declaring that the Chicago City Council Ordinance, in the part of the establishing restricted parking permit 94763 at 5040 N Kenmore Ave, is unconstitutional as applied and enforced and void because it violates provisions of the 14th Amendment to the US Constitution, the Illinois Constitution; and Chicago Municipal Code, as set forth herein;

4.    Issue a preliminary and permanent prohibitory injunction enjoining

a)    prohibiting Defendants from discrimination, and enforcement contrary to law actions against Plaintiff;

b)    prohibiting - City of Chicago and its agencies from enforcement of the Chicago City Council Ordinance in the part of the establishing restricted parking permit 94763 at 5040 N Kenmore Ave.

5.    Issue a mandatory injunction enjoining Defendants to introduce an ordinance fox creation of a restricted parking space pursuant to Municipal Code § 9-64-050 in accordance with the Plaintiff's application.

6.    Damages to compensate for all severe emotional distress and suffering,

7.    Attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

8.    Such other relief the Court deems just and proper.

**ANSWER:**    Defendants deny that Plaintiff is entitled to any of the requested relief.

## **AFFIRMATIVE DEFENSES**

### **First Affirmative Defense – No Damages**

Plaintiff's claims fail in whole or in part to the extent he has suffered no damages.

### **Second Affirmative Defense - Failure to Mitigate Damages**

Without any admission by Defendants that Plaintiff was damaged in any way, to the extent that Plaintiff was damaged, his claims are barred in whole or in part because he failed to use reasonable means to prevent the alleged damage and failed to use reasonable means to mitigate his damages.

**Third Affirmative Defense** – **Immunity from Damages under the Tort Immunity Act**

Plaintiff is barred from seeking monetary relief, attorneys' fees, or damages with respect to his state law claims asserted in Count V under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq*.

**Fourth Affirmative Defense** – **Reservation of Rights**

Defendants reserve the right to assert additional defenses upon discovery of further information concerning Plaintiff's claims.

DATE: June 4, 2018

Respectfully submitted,

EDWARD N. SISKEL,
Corporation Counsel of the City of Chicago

By:     /s/ Christie L. Starzec
        Assistant Corporation Counsel

Christie L. Starzec (ARDC No. 6304071)
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
Christie.Starzec@cityofchicago.org
(312) 744-7864

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Christie L. Starzec, an attorney, hereby certify that on June 4, 2018, I caused the foregoing **Defendants' Answer to Plaintiff's Amended Complaint for Violation of Constitutional Rights** to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to Plaintiff.


/s/ Christie L. Starzec

25