**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BORIS GUDKOVICH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 1:17-cv-8714** |
| **v.** | ) | |
| | ) | **District Judge Thomas M. Durkin** |
| **CITY OF CHICAGO,** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Boris Gudkovich has brought a motion to compel amended responses to a number of his discovery requests. (Dckt. #144). Defendant City of Chicago filed a response (Dckt. #147), to which Gudkovich replied (Dckt. #148), and this matter is ripe for disposition. For the reasons set forth below, Gudkovich's motion to compel discovery is granted in part and denied in part.

**I. BACKGROUND**

The facts of this case are summarized in the District Court's ruling on the City's motion to dismiss. *Gudkovich v. City of Chicago*, No. 17 C 8714, 2020 WL 419409, at *1 (N.D.Ill. Jan. 27, 2020) (Dckt. #103). Essentially, Gudkovich claims that the City denied him a disabled parking permit in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.[1] Chicago residents with disabilities may apply to the Department of Finance ("DOF") for a dedicated street parking space near their residence. Once the DOF approves the application, the local alderman has discretion over whether to seek City Council approval. *See*

---

[1] The District Court dismissed Gudkovich's claims under the Equal Protection Clause, First Amendment, and Due Process Clause. *Gudkovich*, 2020 WL 419409, at *3.

Municipal Code of Chicago § 9-64-050(c).  If both the DOF and the alderman approve, the City Council must pass an ordinance granting the parking permit.

Gudkovich applied for a disabled parking sign to be installed outside of his Chicago home on November 24, 2015.  (Dckt. #93 at 20).  The application was denied by the DOF on February 2, 2016, on the grounds that there were already several designated spaces on his street and no additional spaces could be accommodated.  (*Id.* at 22).  On March 10, 2017, the Mayor's Office for People with Disabilities ("MOPD") reaffirmed the denial of Gudkovich's application, noting that "the aldermanic office for the ward in which the application was made contacted MOPD to indicat[e] its opposition to adding any additional disabled residential parking spaces at that address."  (Dckt. #93 at 26).  Seven months later, however, a different resident on Gudkovich's street had a dedicated space approved.  (Dckt. #131 at 9).  Gudkovich complained to the office of the Alderman, Harry Osterman ("Osterman"), but he contends the office "refused to address his concerns or provide any information."  (*Id.*).  In October 2018, Gudkovich filed another application for a disabled parking permit.  (*Id.* at 10).  This application was recommended for approval by the DOF on December 19, 2018, but the City Council never passed an ordinance approving the permit.  (*Id.*).

In this action, Gudkovich claims the City's denial of his parking permit constitutes a violation of the ADA and the Rehabilitation Act.  (Dckt. #93).  The City asserts the affirmative defense of "unclean hands," among others, arguing that it denied the permit because Gudkovich attempted to bribe staff for the Alderman.  (Dckt. #131 at 18).  According to a joint status report, the only remaining written discovery involves the issues raised in the instant motion to compel. (Dckt. #154 at 1).  Oral discovery has not begun.

## II.     LEGAL STANDARD

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a).  Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules.  *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018).  Rule 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed.R.Civ.P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter.").  Discoverable information is not limited to evidence admissible at trial.  Fed.R.Civ.P. 26(b)(1).

## III.    ANALYSIS

Gudkovich asserts that the City has failed to adequately respond to eleven document production requests and two interrogatories.  He also moves to compel the production of sixteen emails, which the City claims are protected under the deliberative process privilege.  The Court will address each contested discovery request in turn.[2]

### A.     The City must respond to Document Production Request No. 5.

**Request No. 5:** All documents referring or relating to Plaintiff that are in the possession, custody, or control of City Alderman Harry Osterman, including but not limited to any documents associated with Plaintiff's requests for a disabled parking permit. This request includes any communications by Alderman Osterman to any City office or staff relating to Plaintiff generally or his applications for a disabled permit specifically.

---

[2] The Court acknowledges the City's position that because Gudkovich failed to engage in discovery negotiations as required under Rule 37, several of his motions to compel are premature.  Gudkovich, however, disputed the City's position on this matter in his reply.  The Court appreciates the City's willingness to provide substantive responses despite its procedural objection and, in the interest of expediency, the Court will proceed to rule on the substance of Gudkovich's motion.

The City initially objected to this request.  (Dckt. #147 at 3).  However, at a May 3, 2021 meet and confer, defense counsel informed Gudkovich that a search had been conducted of Osterman's work email account from October 1, 2015, to present and that "no documents from that account are being withheld."  (*Id.* at 2).  At that same meeting, the parties agreed the City would conduct an additional "Citywide" search for "Gudkovich" from January 1, 2015, to present.  (*Id.* at 4).  That search has been completed and the City affirmed that it plans to review and produce any non-privileged documents that are responsive to Request No. 5 in due course.  (*Id.*).  The City maintains that a request for documents from earlier than 2015 is overbroad and "extremely unlikely to uncover any relevant information."  (*Id.*).  In his reply, Gudkovich does not argue otherwise.

It appears, then, that the parties are in agreement as to Request No. 5 and Gudkovich simply seeks a firm deadline for disclosure.  The Court therefore orders the City to produce any documents referring or relating to Gudkovich that were uncovered in its recent "Citywide" database search by February 9, 2022, to the extent that they have not been produced already. The City must also provide a sworn certification attesting to the methodology used to conduct the search by the same date and to its production of documents turned up in the search.  *See, e.g., Hansen v. Country Mut. Ins. Co.,* No. 18 CV 244, 2020 WL 5763588, at *3 (N.D.Ill. Sept. 28, 2020) (ordering certification of compliance with discovery order) (citing cases).  Should the City determine that materials are privileged during its review, it must describe them in a privilege log (consistent with this Court's website and Federal Rule of Civil Procedure 26(b)(5)) by the same date.

**B.      Although Request for Production No. 23 is overbroad and objectionable, Request for Production No. 24 is appropriate and the City must respond.**

**Request No. 23:** All documents supporting or contradicting the City's answers to the allegations set forth in Plaintiff's complaint.

**Request No. 24:** All documents supporting or contradicting each of the City's affirmative defenses.

The City objects to these requests on the grounds that (1) requests for documents that support or contradict certain positions improperly require counsel to conduct a legal analysis to determine whether documents are responsive; and (2) seeking all documents in existence that may support or contradict the City's answers or affirmative defenses is overbroad and unduly burdensome. (Dckt. #147 at 3). The Court agrees in part.[3]

By seeking all documents relevant to the City's answers, Request No. 23 is similar to so-called "blockbuster interrogatories," which require a responding party to identify every fact supporting the allegations of its answer and affirmative defenses. Courts typically find such interrogatories to be overly broad and unduly burdensome on their face. *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D.Kan. 1998). "[T]he same concerns apply with equal force to requests for production that encompass every allegation or affirmative defense set forth in a party's pleading." *Lillard v. University of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *7 (W.D.K.Y. Apr. 7, 2014). While parties are permitted to request categories of documents that relate to specified pertinent matters, *Dasuka v. Green Bay Packaging, Inc.*, 291 F.R.D. 251, 261 (E.D.Wisc. 2013), the designation must be sufficiently clear so that a person of ordinary intelligence is able to understand what documents are required and the court may discern whether the requested documents have been produced, 8B Wright, Miller & Marcus,

---

[3] The City's first objection – that responding to this request would require legal analysis – is without merit. A request for documents that support *or* contradict a party's position is essentially a request for all documents relevant to that position.

Federal Practice and Procedure §2211 at 173 (2010). Request No. 23 is too broad to meet either test. *See Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2001 WL 1002480, at *7 (N.D.Ill. Aug. 30, 2001) (finding a request for all documents "related to" the current lawsuit to be "grossly overbroad").

On the other hand, the more succinctly worded Request No. 24 – which seeks all documents relevant to the City's *affirmative defenses* – is permissible. In fact, the City should have already identified these documents under the Court's Mandatory Initial Discovery Pilot Project ("MIDP"), which the parties were required to participate in. (Dckt. #6). In particular, Request No. 3 in the MIDP standing order requires parties to list "the documents . . . known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses." Accordingly, the City should have already identified the documents sought under Request No. 24 and it should not be unduly burdensome to produce them, to the extent they have not been produced already and are not privileged, on or before February 9, 2022.

### C. Discovery of City-issued parking permits and applications other than Gudkovich's must be limited to disabled parking permit applications where applicants were accused or found guilty of misconduct in connection with the application process.

The City has asserted the affirmative defense of "unclean hands," arguing that Gudkovich's claims are barred because he attempted to bribe the Alderman's chief of staff to secure a disabled parking permit. (Dckt. #131 at 18). Gudkovich's discovery requests 14 through 21 were issued in response to that defense and essentially seek to determine whether the City has denied any other individuals parking permits based on criminal allegations or convictions. According to Gudkovich, "while the City claims that it has precluded Mr. Gudkovich's request for a parking permit based on allegations of attempted bribery, this

requested discovery will show that the City has not (and does not) use this [as] a basis for denying access to disabled persons." (Dckt. #144 at 8). The City's predominant objections to these requests are that they are overbroad and not proportional to the needs of the case.

"While the federal discovery rules have an expansive reach, they are not without limits, and relevancy is perhaps the most important of those constraints." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 946396, at *4 (N.D.Ill. Feb. 20, 2018). As noted above, for discovery to be relevant, it must be related to the claims or defenses at issue in a case, rather than "its general subject matter." *Motorola Sols., Inc.*, 365 F.Supp.3d at 924. Before addressing these overbreadth objections, then, the Court will outline the parties' positions.

First, to prevail on his ADA and Rehabilitation Act claims, Gudkovich must prove that (1) he is a qualified individual with a disability, (2) he was denied the benefits of a public entity, and (3) the denial was on account of his disability. (Dckt. #103 at 6 & n.12); *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996). To satisfy the third element, Gudkovich must allege that either (1) the City intentionally acted on the basis of the disability; (2) the City refused to provide a reasonable modification; or (3) the City's rule disproportionally impacts disabled people. *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). Notably, the benefit Gudkovich alleges he has been denied is not the parking permit itself, but access to public street parking more generally. (Dckt. #103 at 7). The parking permit would be an accommodation or modification that would allow him to access that benefit. Whether the City's denial of that accommodation was reasonable is the question the parties seek to answer through discovery. (*Id.*)

Because the requests at issue are specifically directed at the City's unclean hands defense, it is important to understand exactly what the City asserts, as summarized in its response to Gudkovich's motion to strike the City's answer:

> [T]he City does not argue that those accused of a crime are not covered by the ADA or the Rehabilitation Act. [. . .] On the contrary, the City contends that such serious misconduct as offering a bribe *in connection with* seeking public benefits should bar an ADA and a Rehabilitation Act claim for those benefits, or at a minimum limit the remedies available to a court intervening in the matter.

(Dckt. #134 at 4-5) (emphasis in original).

Although the burden is on the responding party to show why a particular discovery request is improper, *Kodish v. Oakbrook Terrace Fire Prot.*, 235 F.R.D. 447, 450 (N.D.Ill. 2006), "when the discovery request is overly broad, or relevancy is not apparent, the requesting party must establish relevancy," *Hills v. AT&T Mobility Services, LLC*, No. 3:17-CV-556-JD-MGG, 2021 WL 3088629, at *4 (N.D.Ind. July 22, 2021); *see also Greenbank v. Great Am. Assurance Co.*, No. 3:18-cv-00239-SEB-MPB, 2019 WL 6522885, at *3 (S.D.Ind. Dec. 4. 2019) ("A party moving to compel production carries the initial burden of establishing, *with specificity*, that the requested documents are relevant."). With regard to Requests 14 through 21, Gudkovich largely fails to meet that burden. The Court will address each contested request in turn:

### 1. The City must respond to Request for Production No. 14, as limited by the Court.

**Request No. 14.** Documents sufficient to show all disabled parking permits that have been denied by the City for the period from September 2016 to date, including the names of those applicants who had such permit requests denied.

The City argues that this request is (1) impermissibly vague because "denied by the City" could encompass applications denied only by the DOF, denied by the DOF and then affirmed by the MOPD, approved by DOF but not granted an ordinance introduction by the Alderman, or denied by City Council; (2) unduly burdensome where more than 5,000 permit denial appeals

were received by the MOPD from September 2016 to present (and this number does not account for the applicants who decided not to appeal); and (3) not proportional to the needs of the case where Gudkovich's equal protection claim has been dismissed. (Dckt. #147 4-5). Gudkovich did not reply to these objections specifically, and thus failed to clarify which type of denials he seeks. Even if he had narrowed the request to include only those denials that were appealed to the MOPD, however, the request would be overbroad. By his own admission, Gudkovich seeks to establish that the City does not use *allegations of attempted bribery* as a basis for denying permits to disabled people. As currently worded, Request No. 14 would stretch far beyond this scope.

Nonetheless, the Court in its discretion orders the City to supplement its response to Request No. 14 on or before February 23, 2022, to include documents sufficient to identify all disabled parking permits that have been denied based on an applicant being accused or found guilty of misconduct *in connection with his or her application*. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) ("[A] district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties."). This order applies to any denials that were appealed to the MOPD between September 2016 and the date of this order (regardless of whether the MOPD overturned the denial). "Misconduct" includes bribery, attempted bribery, and other arguably illegal acts related to the application process (such as threats, fraud, etc.).

Although the City estimates that more than 5,000 disabled parking permits have been denied and appealed to the MOPD since September 2016, it should not be overly burdensome for the City to comply with this request as narrowed. Unlike with multiple other requests discussed

below, the City unquestionably has knowledge of any applicant who is accused of or committed misconduct in connection with his or her application when the City denied the application for that very reason. Moreover, the Court presumes that the City keeps track of why it denies applications for disability parking permits. Finally, because the City argues that its denial was reasonable given Gudkovich's misconduct with regard to this application process, the amended request is appropriately tailored. Indeed, evidence as to whether and why other applicants have been similarly denied is highly relevant to the City's unclean hands defense and the overarching question of whether its denial of Gudkovich's application was reasonable.

### 2. The City need not respond to Requests for Production Nos. 15 and 16.

**Request No. 15.** Documents sufficient to show all disabled parking permits that have been issued by the City to all individuals who have been convicted of misdemeanors from September 2016 to date, including the names of those individuals.

**Request No. 16.** Documents sufficient to show all disabled parking permits that have been issued by the City to all individuals who have been convicted of felonies from September 2016 to date, including the names of those individuals.

Through these requests, Gudkovich seeks to establish that the City does not consider prior criminal convictions when evaluating an individual's disabled parking permit application. However, the City has never suggested that it does. In fact, it repeatedly notes that parking permit applicants are *not* asked to disclose prior convictions. (Dckt. #147 at 6). The only way the Alderman reviewing an application would know about the applicant's criminal history is if "the applicant proactively disclosed such details." (*Id.*). To answer these discovery requests, then, the City would be forced to conduct a background check on every person issued a parking permit since September 2016 to acquire information that is, apparently, largely irrelevant to the application process.

10

Although relevance is construed broadly, discovery must be proportional to the needs of the case "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). "Proportionality, like other concepts, requires a common sense and experiential assessment." *Generation Brands, LLC v. Decor Selections, LLC*, No. 19 C 6185, 2020 WL 6118558, at *4 (N.D.Ill. Oct. 16, 2020). Requiring the City to identify each permit recipient who has *ever* been convicted of a crime is clearly not proportional to the needs of the case where the City's unclean hands defense rests on the narrow proposition that it is reasonable to deny the application of an individual who has engaged in misconduct in connection with their application. Consequently, these requests are neither relevant to the parties' claims or defenses nor are they proportional to the needs of the case. Accordingly, the City need not respond to them.[4]

### 3. The City need not respond to Requests for Production Nos. 17 and 18.

**Request No. 17.** Documents sufficient to identify all disabled parking permits that have been issued by the City to all individuals who have been accused of a crime from September 2016 to date, including the names of those individuals.

**Request No. 18.** Documents sufficient to identify all disabled parking permits that have been denied based on the applicant being accused of a crime, including the names of those individuals.

---

[4] Even so, the Court notes that the City has not definitively stated that an applicant's criminal history is entirely irrelevant to the evaluation of disabled parking permit applications, or that it would be inappropriate for a City official to consider prior convictions when evaluating an application. Gudkovich argues that if this is the City's position, it should be required to disclose it. (Dckt. #148 at 4). While Gudkovich's request for a list of individuals who were granted permits despite their criminal convictions is clearly overbroad as it relates to the City's unclean hands defense, the criteria used by the City to evaluate permit applications is certainly relevant to whether the denial of Gudkovich's application was reasonable – which is the central inquiry in this case. Asking the City to state whether it considers criminal convictions to be a relevant consideration in the process of determining whether a disabled parking permit application should be approved or denied is an appropriate line of inquiry during oral discovery.

As above, these requests are overbroad given that they seek information related to the criminal activity of applicants generally, rather than the actual or alleged criminal activity of applicants related to their applications. They are also impermissibly vague as they request information about individuals who have been "accused of a crime," without clarifying what constitutes an accusation. Finally, the requests are not proportional to the needs of the case. The burden of the proposed discovery on the City (namely, collecting information that it does not otherwise solicit about thousands of applicants spanning at least a five-year period) significantly outweighs its potential benefit to the plaintiff (confirmation that the City does not typically, if ever, consider criminal accusations when evaluating disabled parking permit applications).

### 4. The City need not respond to Request for Production No. 19.

**Request No. 19.** Documents sufficient to identify all disabled parking permits that have been denied based on an applicant being accused of bribery or convicted of bribery, including the names of those individuals.

As it did in response to Request No. 14, the City argues that this request is impermissibly vague because "denied by the City" could encompass a myriad of applications. Furthermore, the City argues that Request No. 19 is irrelevant to its unclean hands defense because it seeks information about applicants "who have been accused of committing an unrelated bribe, at an unrelated time," rather than applicants who have attempted to commit a bribe in connection with their applications. (Dckt. #147 at 7). The Court agrees and it finds that Request No. 19 is overbroad and seeks information that is not relevant to the City's unclean hands defense. Accordingly, the City need not respond to Request No. 19.

### 5.    The City need not respond to Request for Production No. 20.

**Request No. 20.** Documents sufficient to identify all disabled parking permits (whether disabled or otherwise) given by the City to any City alderman or aldermanic staff from September 2016 to date, including the names of those individuals.

It appears this request is targeted at uncovering instances where aldermen or their staff have been accused of misconduct and then granted a government parking pass despite that misconduct. Gudkovich argues that information about such parking permits "would be relevant and probative to establishing both the impropriety of the action against Plaintiff and magnify a double standard that undermines the Defendant's arguments." (Dckt. #148 4-5). The Court disagrees. Not only is this request not sufficiently tailored to instances where disabled parking permits have been granted despite misconduct related to the permit application, but it fails to focus on disabled parking permits at all. Gudkovich suggests that "parking placards/permits provided due to their governmental positions" are "equivalent to a disabled parking permit." (*Id.* at n.4.). While they may be used in a similar way, the process of selecting who receives such a permit – the only process relevant to this case – is significantly different. Whether an alderman or a member of his or her staff has received a government parking pass far exceeds the scope of the City's defense and is not otherwise relevant to the claims in this case.

### 6.    The City need not respond to Request for Production No. 21.

**Request No. 21.** All documents sufficient to identify all parking permits (whether disabled or otherwise) given by the City to anyone working for the office of the City Mayor or various City departments from September 2016 to date including the names of those individuals.

The City of Chicago employs approximately 36,000 people.[5] The Court cannot imagine how information regarding each of their parking permits – the compilation and review of which

---

[5] *Payroll Administration for City Employees*, City of Chicago, chicago.gov/city/depts/fin/prvdrs/Payroll.html (last visited Jan. 26, 2021).

would no doubt require countless hours – would be helpful to resolving the issues in this case. Gudkovich's briefs provide no clarity on the matter. This request is even more far-reaching than Request No. 20, and Gudkovich's motion to compel a response is denied for the same reasons.

### 7. The City must amend its response to Interrogatory No. 2, but need not answer Interrogatory No. 3.

**Interrogatory No. 2.** Identify City of Chicago residents who have been denied a disabled parking permit by the City based upon either their conviction of a crime or being accused of a crime. In so doing, identify with specificity any individual who has had a disabled parking permit denied based upon an allegation of bribery or a conviction of bribery.

**Interrogatory No. 3.** Identify all City of Chicago residents who have been granted a disabled parking permit since September 2016, who had either been convicted of a crime, or accused of a crime.

Interrogatory No. 2 seeks essentially the same information as Document Production Requests 18 and 19. Interrogatory No. 3 seeks the same information as Document Production Requests 15, 16, and 17. Each interrogatory posed to a party "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(3). To this end, it is well-settled that a responding party "must provide true, explicit, responsive, complete, and candid answers to interrogatories." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D.Pa. 1996); *Brock v. Hooker Chem. & Plastics Corp.*, No. 83 C 8383, 1985 WL 2120, at *1 (N.D.Ill. July 24, 1985) (same). A party objecting to an interrogatory bears the burden "to show why the interrogatory is improper." *United States v. 58.16 Acres of Land*, 66 F.R.D. 570, 572 (E.D.Ill. 1975).

Based on the same reasoning outlined several times above, the Court will not reiterate why these requests are significantly overbroad and disproportionate to the needs of the case. The City need not respond to Interrogatory No. 3 and the Court narrows Interrogatory No. 2 as follows. By February 23, 2022, the City must disclose all applicants who have been denied a

disabled parking permit due to misconduct or alleged misconduct in connection with their disabled parking permit application since September 2016. The Court does not find that answering this interrogatory as narrowed will be unduly burdensome for the reasons stated above in regard to Document Production Request No. 14. *See* Section III(C)(1), *supra*.

### C. The deliberative process privilege does not bar the production of the DOF's emails that relate to Gudkovich's 2018 disabled parking permit application.

The final documents at issue are referenced in the City's privilege log. Specifically, Gudkovich seeks to compel the production of sixteen emails authored by Tina Consola and Anthony Gambino between December 11 and December 19, 2018. Both Mr. Gambino and Ms. Consola were DOF employees at that time. The DOF recommended Gudkovich's permit application for approval on December 19. The City's privilege log describes these emails as "[p]re-decisional email[s] deliberating and analyzing Plaintiff's 2018 disabled parking permit application." (Dckt. #144 at 41-42). Based on this description, it asserts that these emails are protected by the deliberative process privilege.

The federal common law deliberative process privilege protects communications that are part of the decision-making process of a governmental agency. *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The purpose of the privilege is to encourage candid discussion among government agents, as frank discussion of legal and policy matters is essential to a government agency's decision-making process. *Id.* The privilege applies only to documents that are both "pre-decisional" and "deliberative." *Id.* "Deliberative" documents are those that "reflect the give-and-take of the consultative process." *Nat'l Immigrant Justice Ctr. v. United States Dep't of Justice*, 953 F.3d 503, 508 (7th Cir 2020). The privilege does not apply to purely factual information unless it is "inextricably intertwined" with such deliberations. *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004).

When evaluating assertions of the deliberative process privilege, courts apply a two-part test. *Ferrell v. U.S. Dep't of Hous. & Urban Dev.*, 177 F.R.D. 425, 428 (N.D.Ill. 1998). First, the Court asks whether the privilege applies to the documents at issue. *Edgar*, 964 F.Supp. at 1209. If this showing is made by the party asserting the privilege, the privilege may still be overcome if the moving party demonstrates a "particularized need" for the withheld documents that outweighs the reasons for confidentiality. *Id.* at 429. The Court finds that the privilege does not protect the emails at issue here for two reasons.

### 1. The deliberative process privilege does not apply where the government's decision-making process is central to the case.

A number of district courts within the Seventh Circuit have concluded that the deliberative process privilege does not apply in cases, like this one, where the government's decision-making process is central to the case. *See, e.g., Anderson United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 527-28 (N.D.Ind. 2005) (holding that the privilege "does not apply in civil rights cases in which the defendant's intent to discriminate is at issue"); *Glenwood Halsted LLC v. Vill. of Glenwood*, No. 11 C 6772, 2013 WL 140794, at *3 (N.D.Ill. Jan. 11, 2013) ("[B]ecause Defendants' intent and misconduct are directly at issue, the deliberative process privilege does not apply."); *Lewis v. Phillips*, No. 10 C 3163, 2012 WL 5499448, at *2 (C.D.Ill. Nov. 13, 2012) (same). The D.C. Circuit has endorsed this approach. *See, In re Subpoena Duces Tecum Served on the Office of Comptroller of Currency*, 145 F.3d 1422 (D.C.Cir. 1998) *modified on reh'g*, 156 F.3d 1279, 1280 (D.C. Cir. 1998) ("[T]he deliberative process privilege is unavailable . . . [in] circumstances in which the cause of action is directed at the agency's subjective motivation."). The Seventh Circuit has not weighed in one way or the other on this issue.

This Court finds persuasive the authority which holds that the deliberative process privilege was created to protect deliberations of a political nature, rather than the application of straightforward and established criteria to routine matters. *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D.Cal. 1995) ("The deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy."). The Court further agrees that the privilege more logically applies to cases where the governmental decision-making process was collateral to the suit. *See In re Subpoena*, 145 F.3d at 1424 ("If Congress creates a cause of action that deliberatively exposes government decision-making to the light, the privilege's raison d'être evaporates."). Consequently, the Court finds that the deliberative process privilege does not apply here given that the government's decision-making process is central to the resolution of this case.

### 2. Even if the deliberative process privilege applies to this category of cases, it does not apply here given the record in this case.

In the absence of clear guidance by the Seventh Circuit on this issue, several courts in this District have declined to adopt such a categorical approach and have instead applied the established two-step formula on a case-by-case – and document-by-document – basis. *See, e.g., Illinois Coalition for Immigrant and Refugee Rights, Inc. v. Wolf*, 19 C 6334, 19 C 6334, 2020 WL 7353408, at *2 (N.D.Ill. Dec. 15, 2020) (declining to follow categorical approach); *Illinois League of Advocates for the Developmentally Disabled v. Quinn*, No. 13 C 1300, 2013 WL 4734007, at *3 (N.D.Ill. Sept. 3, 2013) ("In the absence of clear precedent, we are reluctant to preclude reliance on the privilege – generally a case-specific proposition – as a matter of law."). For the sake of completeness, the Court will do the same here.

> a. **The City failed to make a *prima facie* showing that the deliberative process privilege applies to these emails.**

In order for the asserting party to make a *prima facie* showing that the deliberative

process privilege applies, three things must occur:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Ferrell*, 177 F.R.D. at 428. Here, the City failed to submit an affidavit or declaration by a

department head with control over this matter. As a result, no formal claim of privilege has been

made by an appropriate official and no "precise and certain" reasons have been given for

preserving the confidentiality of these emails by someone with personal knowledge of those

reasons. Accordingly, the City has failed to satisfy the threshold requirements to make the *prima*

*facie* showing that the deliberative process privilege applies. *See, e.g., Evans v. City of Chicago*,

231 F.R.D. 302, 317 (N.D.Ill. 2005).

> b. **Gudkovich has demonstrated a particularized need for the emails.**

Even assuming the City had made the requisite *prima facie* showing with respect to the

withheld emails, Gudkovich has met his burden of demonstrating a particularized need for them.

In assessing the "particularized need" prong of the deliberative process privilege analysis, the

Court balances the moving party's need for disclosure against the government's need for secrecy,

considering such factors as:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is, would

hinder frank and independent discussion about governmental policies and decisions.

*Edgar*, 964 F.Supp. at 1209.

The emails concerning Gudkovich's 2018 application are highly relevant to the litigation. Even when courts decline to categorically bar the application of the privilege in cases where the government's decision-making process is a central issue, "the government's intent, where directly contested, is without question a critical factor to consider when analyzing a litigant's need for withheld documents." *Quinn*, 2013 WL 4734007, at *3 (citing cases). The case cited by Gudkovich is a persuasive example. In *Bahena v. City of Chicago*, 17 C 8532, 2018 WL 2905747, at *1 (N.D.Ill. June 11, 2018), the plaintiff accused the government of malicious prosecution and wrongful imprisonment. The court found that a U.S. attorney's memorandum discussing problems with the evidence and "why the prosecutors ultimately decided that the evidence did not support the charges" was clearly significant. Just as the AUSA's memorandum on why Bahena should not be charged was relevant to Bahena's argument that he was unreasonably charged, these DOF employees' discussions about why Gudkovich's application should be approved are relevant to Gudkovich's argument that his application was unreasonably denied.[6]

Furthermore, there is apparently no other evidence that would serve a similar purpose as the emails. The City argues that the "hard copy files" on Gudkovich's applications created by the DOF and the Alderman's office, which it has already produced, constitute adequate evidence. However, these official files are unlikely to illuminate the decision-making process in a similar

---

[6] The City's argument that these emails are irrelevant because they concern the approval of Gudkovich's 2018 application, rather than the DOF's denial of his 2015 application "or the Alderman's 2018 refusal to introduce an ordinance on Plaintiff's behalf," (Dckt. #147 at 12), is unpersuasive where both applications were filed by the same person, in the same departments, seeking the same accommodation, for the same reasons. Both applications were also reviewed after Gudkovich's alleged bribery.

way. *See Quinn*, 2013 WL 4734007, at *7 ("Even if Defendants provided some information from this category, nothing is as likely to reveal their underlying intent as their own internal discussions on this most critical topic.")  As to the third factor, the government's role as the defendant further weighs in favor of disclosure.  *Cf. Evans*, 231 F.R.D. at 317 (noting that the government's role as a non-party weighs against a finding of need).  Fourth, the denial of public services to someone with a disability is certainly a serious matter.  *Quinn*, 2013 WL 4734007 at *7 (noting that the citizens of Illinois have an interest in litigation that touches on "how the government allocates its public resources for the disabled, and whether our most vulnerable citizens are receiving appropriate care").

The final factor is the only one weighing against disclosure, as waiving privilege over emails written by government employees may cause employees to pause before engaging in similar discussions in the future.  However, courts have repeatedly expressed an expectation that government employees will continue to conduct their duties and engage in thorough and honest deliberations despite such orders to compel.  *Bahena*, 2018 WL 2905747, at *4; *Quinn*, 2013 WL 4734007 at *7.  Thus, this factor is outweighed by the other four factors favoring disclosure. Accordingly, the Court finds that Gudkovich has met his burden to show particularized need for the December 2018 emails and this need outweighs the City's interest in keeping the emails confidential.  The City must disclose the emails to Gudkovich by February 2, 2022.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel is granted in part and denied in part.  By February 2, 2022, defendant is ordered to produce the disputed DOF emails listed on its privilege log.  By February 9, 2022, defendant must produce documents in response to Production Request Nos. 5 and 24, as limited by the Court.  By February 23, 2022, defendant

must produce documents in response to Production Request No. 14 and amend its answer to Interrogatory No. 2, as limited by the Court. Plaintiff's motion to compel is otherwise denied. By March 2, 2022, the parties shall file a joint status report setting forth what discovery remains, and a proposed schedule for the completion of any remaining discovery.

**ENTERED: January 27, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**